## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROSETTA B. DAVIS,
c/o THE FORD LAW FIRM
506 9TH Street, NW
Washington, D.C. 20004

*Plaintiff,*

v.

MICHAEL YOUNG, Acting Secretary
U.S. Department of Agriculture
1400 Independence Ave, SW
Washington, DC 20250

*Defendant.*

Civil Action No.:

**COMPLAINT AND JURY
DEMAND**

Rosetta Davis brings this action to redress the retaliation she has suffered at the U.S. Department of Agriculture (USDA) because of her prior equal employment opportunity (EEO) activity, in violation of her federal rights.

### PRELIMINARY STATEMENT

1. This action arises from USDA management's retaliatory actions against Plaintiff Rosetta Davis, a long-time employee of USDA who was asked to participate in a federal investigation of whistleblower allegations implicating USDA's Office of the Assistant Secretary for Civil Rights (OASCR).

2. The management actors involved include Telora Dean, David Leon King, Geraldine Herring, Kenneth Baisden, Brian Garner, and Assistant Secretary for Civil Rights Joe Leonard. When the events discussed in this Complaint took place, Leonard oversaw OASCR and the civil rights offices within USDA's sub-agencies; all managers worked

under Leonard except Garner, who worked in senior management in the Office of Civil

Rights at the Farm Service Agency (FSA).  Several of these management actors have

very close relationships.

3.  Ms. Davis is an African-American woman, 53 years old, and her elderly mother's

caretaker.  She is what some would describe as "old school"—she believes in hard work.

She has taken new assignments, even those she did not want, without murmuring.  As her

outstanding performance appraisals show, she has excelled across the board.

4.  Ms. Davis made a mistake while working under King.  He began asking her for sex and

offered to give her a GS-13 promotion in exchange for it. Ms. Davis, who had pursued a

promotion for years, agreed but later ended the relationship with King. Immediately after

ending it, she became the target of aggressive sexual harassment and brutal retaliation.

She never received the promotion.

5.  The retaliatory scheme conducted against Ms. Davis is extensive:  USDA management

has denied Ms. Davis a GS-13 promotion several times even though she completed the

requirements management gave her; transferred her involuntarily to numerous sub-

agencies and re-classified her position at least three times in order to thwart her efforts to

obtain a promotion or otherwise advance her career; and targeted her with other acts of

retaliatory ridicule, insult, and intimidation.  These events have created a hostile work

environment for Ms. Davis.

6.  USDA management has retaliated, and continues to retaliate, against Ms. Davis because

of her prior EEO activity. She opposed egregious management misconduct—including

conduct violating EEO laws and regulations—and filed EEO complaints against

management.  Each management member named above was fully aware of Ms. Davis'

prior EEO activity.

7.  In or around January 2014, Leonard ordered Ms. Davis's involuntary transfer to FSA.

Shortly after her transfer, Ms. Davis overheard Brian Garner, her second line supervisor,

say to a subordinate, "Make her as uncomfortable as you can."

8.  On October 19, 2016, after Ms. Davis protested because her supervisor Darlene Levy

Thompson tried to stop her from leaving a meeting by physically blocking the door.

When Ms. Davis, a very small, petite woman, begged Thompson to let her go back to her

desk, Thompson reluctantly moved but threatened: "I'm gonna get you."

9.  Ms. Davis was immediately placed on administrative leave and remains on leave.  She

filed another EEO Complaint against Ms. Thompson in November 2016.

10. USDA management has done nothing to protect Ms. Davis's right to freedom from

workplace retaliation even though Ms. Davis has complained to management repeatedly

about the unrelenting retaliation and resultant harm she has incurred.   Indeed, upon

information and belief, USDA management has not followed its own protocol in

processing Ms. Davis's EEO complaints or disciplining the management members

responsible for retaliating against Davis.

11. USDA maintains a culture of retaliation and harassment that has received national

attention.  On May 18, 2015, the U.S. Office of Special Counsel concluded that some

OASCR management members violated EEO management directives and USDA

regulations in processing employees' EEO complaints.[1]  The next year, on December 1,

---

[1] Letter from Carolyn Lerner to President Barack Obama dated March 23, 2015
(https://osc.gov/PublicFiles/FY2015/15-24%20DI-14-2556,%20DI-14-4627,%20and%20DI-15-

2016, members of the House Oversight and Government Reform Committee noted that

the response from Leonard and other high-level USDA officials to USDA's retaliation-

and-harassment problem was deficient and disappointing.[2]

12. In October 2016, USDA management placed Ms. Davis on indefinite administrative

leave and has since asked her to resign despite her receiving excellent performance

appraisals and a performance cash award for 2016.

13. According to Thomas Mulhern, HR Director for FSA, because Ms. Davis will not resign,

USDA management intends to place her under "administrative investigation." These

events have aggravated what is already a hostile work environment for Ms. Davis.

14. USDA's retaliatory scheme against Ms. Davis violates Title VII of the Civil Rights Act

of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.* (Title

VII). As a result, Ms. Davis seeks declaratory and injunctive relief, compensatory

damages, equitable relief, and attorney's fees and costs to redress USDA's retaliatory acts

and harassment.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over Ms. Davis's claims under 28 U.S.C. §§ 1331 and 1343

because the matters arose in controversy under U.S. federal law.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to

Ms. Davis's claims took place in the District of the District of Columbia.

## PARTIES

---

0001/15-24%20DI-14-2556,%20DI-14-4627,%20and%20DI-15-
0001%20Letter%20to%20the%20President.pdf) (last visited February 3, 2017).
[2] Joe Davidson, *Forest Service slammed over sexual-harassment and civil rights complaints*,
Washington Post, December 3, 2016
(https://www.washingtonpost.com/news/powerpost/wp/2016/12/02/forest-service-slammed-over-
sexual-harassment-and-civil-rights/?utm_term=.5a6e7a0bae48) (last visited February 3, 2017).

17. Plaintiff Rosetta Davis, a petite woman, is a resident of the District of Columbia.  She joined USDA in 2001.  Over the course of her USDA tenure, Ms. Davis has received performance ratings of "superior" or "outstanding."  Ms. Davis has exhausted her administrative remedies by making EEO counselor contact; filing a complaint, which was never decided; and waiting at least 180 days before bringing this action.

18. Ms. Davis has transferred within USDA multiple times.  From April 2001 to July 2002, she served as a GS-8 Equal Opportunity Assistant on a Resource Management detail. From July 2002 to October 2008, she served as a GS-11 Resource Management Specialist in the Accountability & Resource Management Division.  From November 2008 to March 2009, she served as a GS-12 Management Program Analyst in OASCR's Planning Policy & Evaluation Division.  From October 2009 to March 2011, she served as a GS-12 Management Program Analyst in OASCR's Compliance Division.  From March 2011 to December 2011, she served as a GS-12 Equal Opportunity Specialist in OASCR's Agricultural Marketing Service.  From December 2011 to May 2012, she served as a GS-12 Management Program Analyst in OASCR's Cultural Transformation Division.  From June 2012 to September 2012, she served as a GS-12 Management Program Analyst in OASCR's Policy Division.  From October 2012 to December 2013, she served as a GS-12 Management Program Analyst in OASCR's Cultural Transformation Division.  Since January 2014, she has served as a GS-12 Management Program Analyst in FSA's Office of Civil Rights.  Most of these transfers were involuntary and ordered by Leonard.

19. Defendant Michael Young, sued in his official capacity, is the current USDA Acting Secretary.

**STATEMENT OF FACTS**

5

20. Ms. Davis had cause to file several EEO complaints before the May 30, 2012 EEO complaint precipitating this action.[3]

   ***The discrimination and harassment leading to Ms. Davis's 2002 EEO complaint***

21. In 2002, Ms. Davis worked as a GS-8 Equal Opportunity Specialist under Telora Dean's supervision.

22. During that time, Dean pestered Ms. Davis to engage in unethical and unlawful discriminatory conduct.  For example, Dean instructed Ms. Davis to use a USDA-issued credit card to purchase items for Dean's personal use.  Dean also instructed Ms. Davis to destroy EEO complaints filed against USDA management.

23. Ms. Davis refused.  Concerned that Dean's directives were unethical and unlawful, Ms. Davis notified management and filed an EEO complaint.

24. EEO counseling began; however, upon information and belief, USDA took no further action.

25. But Ms. Davis was now on the radar as a "trouble maker."

   ***The discrimination and harassment leading to Ms. Davis's 2009 EEO complaint***

26. Around 2008, Ms. Davis was assigned to work on the Basu Settlement Agreement, a special OASCR project, under King's supervision.

27. Ms. Davis was a GS-12 Management Program Analyst at the time.

28. King began visiting Ms. Davis's office every day.  He took her to lunch and dinner regularly.

29. After learning that Ms. Davis wanted greater job responsibility and a GS-13 promotion, King promised to help her obtain the promotion in exchange for sex.  A casual sexual

---

[3] For the purposes of this Complaint, Ms. Davis discusses only three prior EEO complaints.

relationship developed between them.  After about eight months, Ms. Davis ended the

relationship with King after he began asking her for anal sex.

30. King began sexually harassing Ms. Davis almost immediately.  He continued coming to

her office in the morning, several times a week, to pester her for sex.  Each time, Ms.

Davis rejected Mr. King's advances.

31. This drew anger from Mr. King, who persisted with his unwelcome and aggressive sexual

advances.

32. King also spread damaging rumors about Ms. Davis.   Among other things, he told his

office friends and others in the office that "Rosetta was a freak" and that "Rosetta thought

she would get a promotion."

33. Leonard and other USDA management members joined King in making Ms. Davis the

subject of unwelcome insult and intimidation.

34. Ms. Davis asked Connie Bails, a USDA management, to make King to stop sexually

harassing her.  But King would not stop.

35. As a result, Ms. Davis filed a EEO complaint in 2009 against King for sex discrimination,

retaliation, and harassment based on sex and retaliation.

36. USDA, upon information and belief, took no action on that complaint.

### The discrimination and harassment leading to Ms. Davis's 2011 EEO complaint

37. OASCR was reorganized later in 2009, and Ms. Davis transferred to OASCR's

Compliance Division, where she worked under Geraldine Herring's direct supervision.

38. Ms. Davis performed GS-13-level duties there.  Her duties included performing

analytical studies, working on regulations and standard operating procedures, working on

teams tasked with conducting compliance reviews, and authoring responses to

noncompliance issues.

39. Although Ms. Davis was assigned GS-13-level work, she was paid a GS-12 salary.

40. This concerned Ms. Davis: She knew that she had performed GS-13-level work
    competently since 2008 and that senior USDA officials had promised her a GS-13
    promotion if she underwent further training (which she did) and performed GS-13 work
    competently for a year (which she also did).

41. Around 2010, Ms. Davis suffered an injury while on the job, underwent surgery, and
    received approved medical leave so that she could telework while recuperating at home.

42. The leave arrangement also allowed her to telework from home.

43. After two weeks of teleworking from home, Herring charged Ms. Davis 44 annual leave
    hours and tried to interrogate her about her absence from the office.

44. But Herring treated one of Ms. Davis's colleagues who obtained similar arrangements
    because of a medical issue more favorably: Herring did not charge the colleague any
    annual leave hours and did not try to interrogate the colleague about being absent from
    the office.

45. In March 2011, Ms. Davis filed a EEO complaint alleging disability discrimination,
    among other EEO violations, because Herring, who knew about her prior EEO
    complaints, gave her an unwarranted written reprimand and failed to reasonably
    accommodate her disability.

46. On April 28, 2011, Leonard, who knew about the complaint against Herring, ordered Ms.
    Davis's involuntary transfer to OASCR's Agricultural Marketing Service, advising her to
    accept the involuntary transfer in order to avoid termination.

47. On September 22, 2011, USDA resolved the March 2011 EEO complaint by settlement.
    USDA agreed to exclude Herring from Ms. Davis's chain of command from that day on.

USDA also agreed to restore Ms. Davis's annual leave hours, reassign her to a mutually selected USDA division, and refrain from retaliating against her in any way because of her prior EEO activity.

### *The retaliation and harassment Davis has experienced as a result of her prior EEO activity*

48. After resolving the EEO complaint against Herring, Ms. Davis continued making the case for a GS-13 promotion to USDA management.  She explained that in November 2008, Sherie Hinton Henry and Michael Watts told her she would become eligible for a GS-13 promotion if she served as a GS-12 Management Program Analyst for one year and received at a "satisfactory" or higher performance appraisal rating.  Because Ms. Davis exceeded those requirements—she had served as a GS-12 Management Program Analyst since 2009 and had received excellent performance appraisals—she believed she was eligible for a GS-13 promotion.

49. Each time Ms. Davis requested a promotion, she was told to complete more training and more details while performing GS-13-level work in order to obtain the promotion.

50. But instead promoting Ms. Davis each time she completed those requirements, USDA management kept shuffling her all over OASCR.

51. For example, in January 2012, Ms. Davis began a detail in OASCR's Cultural Transformation Division under Gladys Vaughn's supervision.

52. Ms. Davis never received a position description, performance plan, or performance appraisal from Vaughn.

53. Several GS-12 employees were promoted to GS-13 after performing duties similar to Ms. Davis's while completing 120-day details as she did.

54. Ms. Davis, however, was not promoted.

55. Around May 2012, Dr. Leonard ordered Ms. Davis's involuntary transfer to OASCR's Policy Division without explanation.

56. Ms. Davis begged Dr. Leonard not to uproot her from the Cultural Transformation Division since she had worked there for only a short time.  She reminded him of the prohibition against interference and coercion spelled out in the September 2011 Settlement Agreement.  She also explained how uprooting her frequently and shuffling her all over OASCR had stunted her job performance and hindered her career advancement by making her appear professionally unstable.

57. Dr. Leonard remained unmoved.

58. In the Policy Division Ms. Davis worked under Kenneth Baisden's supervision.  She continued receiving a GS-12 salary for performing GS-13-level duties competently.

59. On May 30, 2012, Ms. Davis filed the EEO complaint precipitating this action.

60. On June 5, 2012, Baisden, who knew about the EEO complaint, placed Ms. Davis on a performance plan with requirements that she believed she could not meet given her background and experience.

61. About a week later, Ms. Davis emailed Baisden to express her concerns.  She explained that USDA management was setting her up for failure by ordering her involuntary transfer to the Policy Division, because she lacked the background and training to perform the crucial "Policy & Analysis" elements of her new job.  She then proposed Baisden designate the "Policy & Analysis" element of the performance plan as "noncritical" for 120 days so that she could get properly trained for it.  Baisden refused.

62. On July 26, 2012, Baisden denied Ms. Davis's request for administrative leave to consult with legal counsel about her EEO complaint.

63. On June 5, 2013, Leonard, who also knew about Ms. Davis's prior EEO activity, ordered Ronald Branch,[4] a USDA management member, to send Ms. Davis a letter falsely accusing her of abusing her telework privileges.

64. On December 12, 2013, while Ms. Davis was on use-or-lose annual leave, Leonard ordered her involuntary transfer to FSA's Office of Civil Rights.

65. Ms. Davis reported to FSA's Office of Civil Rights in mid-January 2014.

66. At the time, FSA's Office of Civil Rights was run by Brian Garner, who officiated King's wedding.

67. When Ms. Davis first reported to FSA, USDA management cut off her transit benefits and refused to give her a cubicle, telephone, computer, or job assignment.

68. Around the same time, the U.S. Office of Special Counsel asked Ms. Davis to assist with its investigation of whistleblower allegations that OASCR management was delaying EEO-complaint processing and ordering the destruction of EEO complaints against OASCR management.  Ms. Davis was asked to provide information about her own EEO complaints and the times USDA management instructed her to destroy USDA employees' EEO complaints.

69. Winona Lake Scott, who worked closely with Leonard at OASCR, was a subject of the investigation.  She had personal knowledge about Ms. Davis's efforts to obtain a GS-13 promotion, her prior EEO activity, and her history of involuntary transfers ordered by Leonard.

---

[4] Mr. Branch has since retired.

70. Ms. Davis repeatedly asked FSA for a cubicle, telephone, and computer, explaining that she needed them to give the U.S. Office of Special Counsel the information it had asked her for.

71. FSA management did not budge.

72. Ms. Davis also requested access to her old work computer because it housed her old emails and work products, all of which she believed would help her assist the U.S. Office of Special Counsel with its whistleblower investigation.

73. USDA management denied her requests for access to her old work computer.  In fact, she was told to submit a FOIA request.

74. To get around these problems, Ms. Davis asked Garner to allow her to telework from home so that she could use her personal computer to prepare her responses to the U.S. Office of Special Counsel's inquiry. Garner approved her request.  She teleworked for a couple of weeks but occasionally went into the office.

75. Because Ms. Davis had not received any job assignments from FSA since her start there, she started seeking job assignments on her own while under Garner's supervision.

76. Andrew Malloy, one of Garner's subordinates, agreed to assign her work.

77. While in the office one afternoon, Ms. Davis overheard Garner talking to Malloy about her.  Garner said to him, "Make her as uncomfortable as you can."

78.  FSA did not provide Ms. Davis a computer, telephone, designated cubicle, or transit benefits until March 2014.  And before doing so, FSA made her undergo an extensive background check.

79. Ms. Davis has been on forced administrative leave since she filed an EEO complaint
against her current supervisor Darlene Levy Thompson, who physically blocked Ms.
Davis's exit from a meeting and threatened her.


## CLAIMS FOR RELIEF

### Count 1: Retaliatory Hostile Work Environment
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*)

80. Ms. Davis re-alleges and incorporates paragraphs 1 through 75 by reference as if fully set
forth here.

81. Title VII proscribes subjecting an employee to a retaliatory hostile work environment for
engaging in opposition to what she reasonably and in good faith believes constitutes
conduct proscribed by Title VII.

82. When the events discussed above took place, USDA was an "employer" within Title
VII's meaning.

83. When the events discussed above took place, Ms. Davis was an "employee" within Title
VII's meaning.

84. USDA created and maintained an abusive environment in which retaliatory intimidation,
ridicule, and insult were so severe and pervasive that it altered the conditions of Ms.
Davis' employment and created a retaliatory hostile work environment, in violation of
Title VII.

85.  This ongoing retaliatory hostile work environment includes, but is not limited to, the
following events: Dean's asking Ms. Davis to make illegal purchases on Dean's behalf
using government funds, Dean's asking Ms. Davis to shred EEO complaints, and Dean's

subsequent retaliation against Ms. Davis, which has prevented her from being promoted;

King's abuse of authority by promising Ms. Davis a promotion in exchange for sexual

favors and subsequent sexual harassment after she ended their relationship; Leonard's

retaliation against Ms. Davis for filing an EEO complaint against King for sexual

harassment by transferring her at least three times to various agencies, where her position

was re-classified without explanation to prevent her from becoming a GS-13; USDA

management disclosing Davis's complaint against King to her current managers, who

told her that she has a "reputation"; USDA management's decision to transfer to FSA and

then deny her a computer, cubicle, transit benefits, and job assignments from January

2014 to March 2014; interfering with her participation in a whistleblower investigation

conducted by the U.S. Office of Special Counsel; Thompson blocking Ms. Davis's exit to

prevent her from leaving a conference room and then telling Ms. Davis that she was

"going to get" her; management denying Ms. Davis training opportunities and subjecting

her to unfair demands and scrutiny; and management placing her on administrative leave

after the Thompson incident and not allowing her to return to work unless she submits to

an "administrative investigation."

86. This conduct has culminated into a hostile work environment for Ms. Davis.

87. USDA is vicariously liable for the actions of every USDA management actor named in

this Complaint.

88. USDA has directly and proximately caused Ms. Davis substantial economic loss, damage

to her career and professional reputation, humiliation, pain, and suffering.

89. USDA's actions were wanton, reckless, or in willful indifference to Ms. Davis's rights.

***Count 2: Retaliation***
***(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*)***

14

90. Ms. Davis re-alleges and incorporates paragraphs 1 through 85 by reference as if fully set forth here.

91. Title VII proscribes retaliation against any employee for engaging in opposition to what she reasonably and in good faith believes constitutes conduct proscribed by Title VII.

92. Ms. Davis engaged in protected activity by opposing treatment she believed constituted conduct proscribed by Title VII and participating in the EEO process.

93. USDA took materially adverse employment action against Ms. Davis by doing the following: refusing to promote her; subjecting her to frequent involuntary transfers; re-classifying her job description in order to prevent career advancement; putting her on a performance plan designed to hinder her career advancement; repeatedly refusing to give her a computer, cubicle, transit benefits, or any job assignments when she transferred to FSA; hindering her participation in an OSC whistleblower investigation by denying her office essentials, such as a computer, telephone, and cubicle, upon her transfer to FSA; repeatedly denying her request for access to her old work computer; and making her the target of insults and acts of intimidation.

94. USDA's retaliatory actions were causally connected to Ms. Davis's protected activity.

95. USDA's actions have directly and proximately caused Ms. Davis substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

96. USDA's actions were wanton, reckless, or in willful indifference to Ms. Davis's rights.

## REQUEST FOR RELIEF

WHEREFORE, Ms. Davis requests relief against USDA as follows:

    i.    Enter judgment in her favor against USDA for retaliation in violation of Title VII;

ii.     Enter judgment in her favor against USDA for subjecting her to a retaliatory hostile work environment in violation of Title VII;

iii.    Order her retroactive appointment to an appropriate GS-13 position;

iv.     Award her compensatory damages of $300,000.00;

v.      Award her attorney's fees and the costs of this litigation;

vi.     Award her front pay and future benefits as may be appropriate;

vii.    Enjoin USDA from discriminating against, retaliating against, or harassing her in any way;

viii.   Award her appropriate prejudgment interest;

ix.     Award such other relief as may be necessary and appropriate.

## JURY DEMAND

Ms. Davis demands a jury trial.

Respectfully Submitted,

/s/ Yaida O. Ford
Yaida O. Ford, # 497013
Onyebuchim A. Chinwah[5]
The Ford Law Firm, PLLC
506 9th Street, NW
Washington, DC 20004
Office: (202) 792-4946
yford@fordlawpros.com
ochinwah@fordlawpros.com

---

[5] Admitted in Maryland only.  Practicing in the District of Columbia under the direct supervision of Yaida O. Ford, a member of the D.C. Bar, in accordance with D.C.C.A. Rule 49(c).

16