## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROSETTA B. DAVIS,
c/o Ford Law Pros P.C.
1001 G Street, Ste. 800, NW
Washington, DC 20001,

       *Plaintiff,*

   v.

SONNY PERDUE, Secretary of the
U.S. Department of Agriculture,[1]

       *Defendant.*

Civil Action No.: 1:17-cv-00245

SECOND AMENDED
COMPLAINT AND JURY
DEMAND

Rosetta Davis brings this action to redress the retaliation she has suffered at the U.S. Department of Agriculture (USDA) because of her prior equal employment opportunity (EEO) activity, in violation of her federal rights.

## PRELIMINARY STATEMENT

1.    This action arises from USDA management's retaliatory actions against Plaintiff Rosetta Davis, a long-time employee of USDA who was asked to participate in a federal investigation of whistleblower allegations implicating USDA's Office of the Assistant Secretary for Civil Rights (OASCR).

2.    The management actors involved include Telora Dean, David Leon King, Geraldine Herring, Kenneth Baisden, Brian Garner, and Assistant Secretary for Civil

---

[1] In accordance with FRCP 25(d), Sonny Perdue is automatically substituted in his official capacity.

Rights Joe Leonard.  When the events discussed in this Complaint took place, Leonard

oversaw OASCR and the civil rights offices within USDA's sub-agencies; all managers

worked under Leonard except Garner, who worked in senior management in the Office of

Civil Rights at the Farm Service Agency (FSA).  Several of these management actors have

very close relationships.

3.      Ms. Davis is an African-American woman, 53 years old, and her elderly

mother's caretaker.  She is what some would describe as "old school"—she believes in

hard work. She has taken new assignments, even those she did not want, without

murmuring.  As her outstanding performance appraisals show, she has excelled across the

board.

4.      Ms. Davis made a mistake while working under King.  He began asking her

for sex and offered to give her a GS-13 promotion in exchange for it. Ms. Davis, who had

pursued a promotion for years, agreed but later ended the relationship with King.

Immediately after ending it, she became the target of aggressive sexual harassment and

brutal retaliation. She never received the promotion.

5.      The retaliatory scheme conducted against Ms. Davis is extensive. USDA

management has denied Ms. Davis a GS-13 promotion several times even though she

completed the requirements management gave her; transferred her involuntarily to

numerous sub-agencies and re-classified her position at least three times in order to

thwart her efforts to obtain a promotion or otherwise advance her career; and targeted

her with other acts of retaliatory ridicule, insult, and intimidation. For instance, around

January 2014, soon after Leonard involuntarily transferred Ms. Davis to FSA, she

overheard Brian Garner, her second-line supervisor, say to a subordinate: "Make her as uncomfortable as you can." These events have created a retaliatory hostile work environment for Ms. Davis.

6.      USDA management has retaliated, and continues to retaliate, against Ms. Davis because of her prior EEO activity. She opposed egregious management misconduct—including conduct violating EEO laws and regulations—and filed EEO complaints against management.  Each management member named above was fully aware of Ms. Davis' prior EEO activity.

7.      USDA management has done nothing to protect Ms. Davis's right to freedom from workplace retaliation even though Ms. Davis has complained to management repeatedly about the unrelenting retaliation and resultant harm she has incurred.   Indeed, upon information and belief, USDA management has not followed its own protocol in processing Ms. Davis's EEO complaints or disciplining the management members responsible for retaliating against Davis.

8.      USDA maintains a culture of retaliation and harassment that has received national attention.  On May 18, 2015, the U.S. Office of Special Counsel concluded that some OASCR management members violated EEO management directives and USDA regulations in processing employees' EEO complaints.[2]  The next year, on December 1, 2016, members of the House Oversight and Government Reform Committee noted that

---

[2] Letter from Carolyn Lerner to President Barack Obama dated March 23, 2015 (https://osc.gov/PublicFiles/FY2015/15-24%20DI-14-2556,%20DI-14-4627,%20and%20DI-15-0001/15-24%20DI-14-2556,%20DI-14-4627,%20and%20DI-15-0001%20Letter%20to%20the%20President.pdf) (last visited April 7, 2017).

the response from Leonard and other high-level USDA officials to USDA's retaliation-and-harassment problem was deficient and disappointing.[3]

9.      USDA's retaliatory scheme against Ms. Davis violates Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.* (Title VII).  As a result, Ms. Davis seeks declaratory and injunctive relief, compensatory damages, equitable relief, and attorney's fees and costs to redress USDA's retaliatory acts and harassment.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over Ms. Davis's claims under 28 U.S.C. §§ 1331 and 1343 because the matters arose in controversy under U.S. federal law.

11.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to Ms. Davis's claims took place in the District of the District of Columbia.

## PARTIES

12.      Plaintiff Rosetta Davis is a resident of the District of Columbia.  She joined USDA in 2001.  Over the course of her USDA tenure, Ms. Davis has received performance ratings of "superior" or "outstanding."  Ms. Davis has exhausted her administrative remedies by making EEO counselor contact; filing a complaint, which was never decided; and waiting at least 180 days before bringing this action.

---

[3] Joe Davidson, *Forest Service slammed over sexual-harassment and civil rights complaints*, Washington Post, December 3, 2016 (https://www.washingtonpost.com/news/powerpost/wp/2016/12/02/forest-service-slammed-over-sexual-harassment-and-civil-rights/?utm_term=.5a6e7a0bae48) (last visited April 7, 2017).

13.     Ms. Davis is a very hard-working USDA employee.  From April 2001 to July 2002, she served as a GS-8 Equal Opportunity Assistant on a Resource Management detail.  From July 2002 to October 2008, she served as a GS-11 Resource Management Specialist in the Accountability & Resource Management Division.  From November 2008 to March 2009, she served as a GS-12 Management Program Analyst in OASCR's Planning Policy & Evaluation Division.  From October 2009 to March 2011, she served as a GS-12 Management Program Analyst in OASCR's Compliance Division.  From March 2011 to December 2011, she served as a GS-12 Equal Opportunity Specialist in OASCR's Agricultural Marketing Service.  From December 2011 to May 2012, she served as a GS-12 Management Program Analyst in OASCR's Cultural Transformation Division.  From June 2012 to September 2012, she served as a GS-12 Management Program Analyst in OASCR's Policy Division.  From October 2012 to December 2013, she served as a GS-12 Management Program Analyst in OASCR's Cultural Transformation Division.  Since January 2014, she has served as a GS-12 Management Program Analyst in FSA's Office of Civil Rights.  Most of these transfers were involuntary and ordered by Leonard.

14.     Defendant Michael Young, sued in his official capacity, is the current USDA Acting Secretary.

## STATEMENT OF FACTS

15.     Ms. Davis had cause to file several EEO complaints before the May 30, 2012 EEO complaint precipitating this action.[4]

---

[4] For the purposes of this Complaint, Ms. Davis discusses only three prior EEO complaints.

*The discrimination and harassment leading to Ms. Davis's 2002 EEO complaint*

16.     In 2002, Ms. Davis worked as a GS-8 Equal Opportunity Specialist under Telora Dean's supervision.

17.     During that time, Dean pestered Ms. Davis to engage in unethical and unlawful conduct.  For example, Dean instructed Ms. Davis to use a USDA-issued credit card to purchase items for Dean's personal use.  Dean also instructed Ms. Davis to destroy EEO complaints filed against USDA management.

18.     Ms. Davis refused.  Concerned that Dean's directives were unethical and unlawful, Ms. Davis notified management and filed an EEO complaint to protect herself from potential retaliation.

19.     EEO counseling began; however, upon information and belief, USDA took no further action.

20.     But Ms. Davis was now on the radar as a "trouble maker."

*The discrimination and harassment leading to Ms. Davis's 2009 EEO complaint*

21.     Around 2008, Ms. Davis was assigned to work on the Basu Settlement Agreement, a special OASCR project, under King's supervision.

22.     Ms. Davis was a GS-12 Management Program Analyst at the time.

23.     King began visiting Ms. Davis's office every day.  He took her to lunch and dinner regularly.

24.     After learning that Ms. Davis wanted greater job responsibility and a GS-13 promotion, King promised to help her obtain the promotion in exchange for sex.  A casual

sexual relationship developed between them.  About eight months later, Ms. Davis ended the relationship with King after he began asking her for anal sex.

25.     King began sexually harassing Ms. Davis almost immediately.  He continued coming to her office in the morning, several times a week, to pester her for sex.

26.     Each time, Ms. Davis rejected Mr. King's advances.

27.     This drew anger from Mr. King, who persisted with his unwelcome and aggressive sexual advances.

28.     Eventually, King began to spread damaging rumors about Ms. Davis. Among other things, he told his office friends and others in the office that "Rosetta was a freak" and that "Rosetta thought she would get a promotion."

29.     Leonard and other USDA management members joined King in making Ms. Davis the subject of unwelcome insult and intimidation.

30.     Ms. Davis asked Connie Bails, a USDA manager, to ask King to stop sexually harassing her.  But King would not stop.

31.     As a result, Ms. Davis filed a EEO complaint in 2009 against King for sex discrimination, retaliation, and harassment based on sex and retaliation.

32.     USDA, upon information and belief, took no action on that complaint.

**The discrimination and harassment leading to Ms. Davis's 2011 EEO complaint**

33.     OASCR was reorganized later in 2009, and Ms. Davis transferred to OASCR's Compliance Division, where she worked under Geraldine Herring's direct supervision.

34.     Ms. Davis performed GS-13-level duties there.  Her duties included performing analytical studies, working on regulations and standard operating procedures, working on teams tasked with conducting compliance reviews, and authoring responses to noncompliance issues.

35.     Although Ms. Davis was assigned GS-13-level work, she was paid a GS-12 salary.

36.     This concerned Ms. Davis: She knew that she had performed GS-13-level work competently since 2008 and that senior USDA officials had promised her a GS-13 promotion if she underwent further training (which she did) and performed GS-13 work competently for a year (which she also did).

37.     Around 2010, Ms. Davis suffered an injury while on the job, underwent surgery, and received approved medical leave so that she could telework while recuperating at home.

38.     After two weeks of teleworking from home, Herring charged Ms. Davis 44 annual leave hours and interrogated her about her absence from the office although her request went through a formal review process and was approved by management.

39.     But Herring treated one of Ms. Davis's colleagues who obtained similar arrangements because of a medical issue more favorably: Herring did not charge the colleague any annual leave hours and did not question her need for medical leave.

40.     In March 2011, Ms. Davis filed a EEO complaint alleging disability discrimination, among other EEO violations, because Herring, who knew about her prior

8

EEO complaints, gave her an unwarranted written reprimand and failed to reasonably accommodate her disability.

41.     On April 28, 2011, Leonard, who knew about the complaint against Herring, ordered Ms. Davis's involuntary transfer to OASCR's Agricultural Marketing Service, advising her to accept the involuntary transfer in order to avoid termination.

42.     On September 22, 2011, USDA resolved the March 2011 EEO complaint by settlement.  USDA agreed to exclude Herring from Ms. Davis's chain of command from that day on.  USDA also agreed to restore Ms. Davis's annual leave hours, reassign her to a mutually selected USDA division, and refrain from retaliating against her in any way because of her prior EEO activity.

43.     The EEO complaint Davis filed against King remained unresolved.

### *The retaliation and harassment Davis has experienced as a result of her prior EEO activity*

44.     After resolving the EEO complaint against Herring, Ms. Davis continued making the case for a GS-13 promotion to USDA management.  She explained that in November 2008, Sherie Hinton Henry and Michael Watts told her she would become eligible for a GS-13 promotion if she served as a GS-12 Management Program Analyst for one year and received at a "satisfactory" or higher performance appraisal rating.  Because Ms. Davis exceeded those requirements—she had served as a GS-12 Management Program Analyst since 2009 and had received excellent performance appraisals—she believed she was eligible for a GS-13 promotion.

45.     Each time Ms. Davis requested a promotion, she was told to complete more training and more details while performing GS-13-level work in order to obtain the promotion.

46.     But instead promoting Ms. Davis each time she completed those requirements, USDA management kept shuffling her all over OASCR.

47.     For example, in January 2012, Ms. Davis began a detail in OASCR's Cultural Transformation Division under Gladys Vaughn's supervision.

48.     Ms. Davis never received a position description, performance plan, or performance appraisal from Vaughn.

49.     Several GS-12 employees were promoted to GS-13 after performing duties similar to Ms. Davis's while completing 120-day details as she did.

50.     Ms. Davis, however, was not promoted.

51.     Around May 2012, Dr. Leonard ordered Ms. Davis's involuntary transfer to OASCR's Policy Division without explanation.

52.     Ms. Davis begged Dr. Leonard not to uproot her from the Cultural Transformation Division since she had worked there for only a short time.  She reminded him of the prohibition against interference and coercion spelled out in the September 2011 Settlement Agreement.  She also explained how uprooting her frequently and shuffling her all over OASCR had stunted her job performance and hindered her career advancement by making her appear professionally unstable.

53.     Dr. Leonard remained unmoved.

54.     In the Policy Division Ms. Davis worked under Kenneth Baisden's supervision.  She continued receiving a GS-12 salary for performing GS-13-level duties competently.

55.     On May 30, 2012, Ms. Davis filed the EEO complaint precipitating this action.

56.     On June 5, 2012, Baisden, who knew about the EEO complaint, placed Ms. Davis on a performance plan with requirements that she believed she could not meet given her background and experience.

57.     About a week later, Ms. Davis emailed Baisden to express her concerns.  She explained that USDA management was setting her up for failure by ordering her involuntary transfer to the Policy Division, because she lacked the background and training to perform the crucial "Policy & Analysis" elements of her new job.  She then proposed Baisden designate the "Policy & Analysis" element of the performance plan as "noncritical" for 120 days so that she could get properly trained for it.  Baisden refused.

58.     On July 26, 2012, Baisden denied Ms. Davis's request for administrative leave to consult with legal counsel about her EEO complaint.

59.     On June 5, 2013, Leonard, who also knew about Ms. Davis's prior EEO activity, ordered Ronald Branch,[5] a USDA management member, to send Ms. Davis a letter falsely accusing her of abusing her telework privileges.

60.     On December 12, 2013, while Ms. Davis was on use-or-lose annual leave, Leonard ordered her involuntary transfer to FSA's Office of Civil Rights.

---

[5] Mr. Branch has since retired.

61.   Ms. Davis reported to FSA's Office of Civil Rights in mid-January 2014.

62.   At the time, FSA's Office of Civil Rights was run by Brian Garner, who officiated David King's wedding.

63.   When Ms. Davis first reported to FSA, USDA management cut off her transit benefits and refused to give her a cubicle, telephone, computer, or job assignment.

64.   Around the same time, the U.S. Office of Special Counsel asked Ms. Davis to assist with its investigation of whistleblower allegations that OASCR management was delaying EEO-complaint processing and ordering the destruction of EEO complaints against OASCR management.  Ms. Davis was asked to provide information about her own EEO complaints and the times USDA management instructed her to destroy USDA employees' EEO complaints.

65.   Winona Lake Scott, who worked closely with Leonard at OASCR, was a subject of the investigation.  She had personal knowledge about Ms. Davis's efforts to obtain a GS-13 promotion, her prior EEO activity, and her history of involuntary transfers ordered by Leonard.

66.   Ms. Davis repeatedly asked FSA for a cubicle, telephone, and computer, explaining that she needed them to give the U.S. Office of Special Counsel the information it had asked her for.

67.   FSA management did not budge.

68.   Ms. Davis also requested access to her old work computer because it housed her old emails and work products, all of which she believed would help her assist the U.S. Office of Special Counsel with its whistleblower investigation.

69.     USDA management denied her requests for access to her old work computer.  In fact, she was told to submit a FOIA request.

70.     To get around these problems, Ms. Davis asked Garner to allow her to telework from home so that she could use her personal computer to prepare her responses to the U.S. Office of Special Counsel's inquiry. Garner approved her request. She teleworked for a couple of weeks but occasionally went into the office.

71.     Because Ms. Davis had not received any job assignments from FSA since her start there, she started seeking job assignments on her own while under Garner's supervision.

72.     Andrew Malloy, one of Garner's subordinates, agreed to assign her work.

73.     While in the office one afternoon, Ms. Davis overheard Garner talking to Malloy about her.  Garner said to him, "Make her as uncomfortable as you can."

74.      FSA did not provide Ms. Davis a computer, telephone, designated cubicle, or transit benefits until March 2014.  And before doing so, FSA made her undergo an extensive background check.

75.     As Davis settled into her new position at FSA, she developed a friendship with Darlene Thompson, an EEO counselor at the time.

76.     They attended church functions together.  Thompson and her husband even visited Ms. Davis's home.

77.     Garner promoted Thompson to a deputy director position around the middle of 2014.

78.     In early 2015, Thompson became Ms. Davis's direct supervisor and eventually became distant and rude to Ms. Davis.

79.     For example, Thompson falsely accused Ms. Davis of bullying a colleague after that colleague, following Thompson's instruction, troubled Ms. Davis about paying a credit card bull for a government issued card.

80.     And after Ms. Davis told Thompson that Thompson's husband had called her out of the blue to inquire if Thompson and Garner were having an affair, Thompson and Garner turned up the heat on Davis.

81.     Thompson repeatedly denied Ms. Davis's requests for training opportunities that could advance Ms. Davis's career.

82.     Then, on or about October 19, 2016, Thompson instigated an argument with Ms. Davis. That day, Ms. Davis met with her for a scheduled performance evaluation. Thompson told Ms. Davis that she would receive a "fully successful" rating.  But Ms. Davis believed she deserved a "superior" rating and explained why.  Grabbing her belongings, Thompson ended the meeting abruptly and asked Ms. Davis to stay in the conference room to meet with another employee about a matter unrelated to Ms. Davis's performance evaluation. Ms. Davis told Thompson that she was not prepared for the unscheduled meeting with that other employee. As Ms. Davis got up to leave, Thompson blocked the door with her body. Ms. Davis—who is a petite woman—begged Thompson to move. Thompson eventually moved but told Ms. Davis, "I'm going to get you!"

83.     Ms. Davis immediately reported the incident to Thomas Mulhern, FSA's HR representative. He placed her on administrative leave, telling her that she has "a reputation."

84.     This compounded Ms. Davis's stress because she realized that USDA management had broken confidentiality about her EEO complaint against King and had spread rumors about their past relationship.

85.     After placing Ms. Davis on forced administrative leave for nearly four months, USDA reassigned her to FSA's Emergency Preparedness Division (EPD) on February 22, 2017.

86.     In this new position, however, USDA has continued to subject Ms. Davis to retaliatory treatment.

87.     On March 16, 2017, USDA sought to hold Ms. Davis's formal EEO Complaint in abeyance and identified this lawsuit as the role reason for requesting abeyance.

88.     As of July 31, 2017, she still does not have a finalized position description. And this new position has no promotion potential.

89.     As of July 31, 2017, she still has not received an ergonomic keyboard and ergonomic chair as reasonable accommodations for the back and wrist injuries that she sustained at work in October 2012. She received these reasonable accommodations before her reassignment to EPD.

90.     Since Ms. Davis's arrival, EPD has also shuffled her between different work stations locations multiple times each day with no office or work station of her own; Ms. Davis has lost several documents and emails because one of Defendant's agents hacked

into her work email and deleted information pertinent to her EEO complaint and the current lawsuit; and Defendant has not allowed her to retrieve her personal belongings and office supplies from her previous work station so that she can use them for her present assignment.

91.     These actions have undermined Ms. Davis's ability to concentrate and as a result have prevented her from discharging her job duties successfully. They have also caused her to experience high blood pressure.

## CLAIMS FOR RELIEF

### COUNT 1: RETALIATORY HOSTILE WORK ENVIRONMENT
### (Violation of Title VII)

92.     Ms. Davis incorporates every preceding paragraph as alleged above.

93.     Title VII proscribes subjecting an employee to a retaliatory hostile work environment for engaging in opposition to what she reasonably and in good faith believes constitutes conduct proscribed by Title VII.

94.     When the events discussed above took place, USDA was an "employer" within Title VII's meaning.

95.     When the events discussed above took place, Ms. Davis was an "employee" within Title VII's meaning.

96.     USDA created and maintained an abusive environment in which retaliatory intimidation, ridicule, and insult were so severe and pervasive that it altered the conditions of Ms. Davis' employment and created a retaliatory hostile work environment, in violation of Title VII.

97.     This ongoing retaliatory hostile work environment includes, but is not limited to, the following events: Dean's asking Ms. Davis to make illegal purchases on Dean's behalf using government funds, Dean's asking Ms. Davis to shred EEO complaints, and Dean's subsequent retaliation against Ms. Davis, which has prevented her from being promoted; King's abuse of authority by promising Ms. Davis a promotion in exchange for sexual favors and subsequent sexual harassment after she ended their relationship; Leonard's retaliation against Ms. Davis for filing an EEO complaint against King for sexual harassment by transferring her at least three times to various agencies, where her position was re-classified without explanation to prevent her from becoming a GS-13; USDA management's decision to transfer to FSA and then deny her a computer, cubicle, transit benefits, and job assignments from January 2014 to March 2014; interfering with her participation in a whistleblower investigation conducted by the U.S. Office of Special Counsel; management denying Ms. Davis training opportunities and subjecting her to unfair demands and scrutiny; refusing to give her an ergonomic keyboard and chair, thereby failing to reasonably accommodate her special needs that stem from a work-related injury; causing her work email to be hacked, thereby allowing the destruction of important saved documents and email correspondence related to her EEO complaint and the current lawsuit; refusing to assign her an office or a work station at her current assignment with EPD; and not allowing her to retrieve her personal belongings and office supplies from her previous work station so that she can use them during her present assignment.

98.     This conduct has culminated into a hostile work environment for Ms. Davis.

99.     USDA is vicariously liable for the actions of every USDA management actor named in this Complaint.

100.     USDA has directly and proximately caused Ms. Davis substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

101.     USDA's actions were wanton, reckless, or in willful indifference to Ms. Davis's rights.

## COUNT 2: RETALIATION
### (Violation of Title VII)

102.     Ms. Davis incorporates every preceding paragraph as alleged above.

103.     Title VII proscribes taking a materially adverse action against any employee for engaging in opposition to what she reasonably and in good faith believes constitutes conduct proscribed by Title VII.

104.     Ms. Davis engaged in protected activity by opposing treatment she believed constituted conduct proscribed by Title VII and participating in the EEO process.

105.     The materially adverse actions USDA took against Ms. Davis as a result of her protected activity include, but are not limited to, the following: refusing to promote her; subjecting her to frequent involuntary transfers; re-classifying her job description in order to prevent career advancement; putting her on a performance plan designed to hinder her career advancement; repeatedly refusing to give her a computer, cubicle, transit benefits, or any job assignments when she transferred to FSA; hindering her participation in an OSC whistleblower investigation by denying her office essentials, such as a computer, telephone, and cubicle, upon her transfer to FSA; repeatedly denying her request for access to her old work computer; making her the target of insults and acts of

intimidation; refusing to give her an ergonomic keyboard and chair, thereby failing to reasonably accommodate her special needs that stem from a work-related injury; causing her work emails to be hacked, thereby allowing the destruction of important saved documents and email correspondence critical to her EEO complaint and the current lawsuit; refusing to assign her an office or workstation at her current assignment with EPD; and not allowing her to retrieve her personal belongings and office supplies from her previous work station so that she can use them during her present assignment.

106.    USDA's retaliatory actions were causally connected to Ms. Davis's protected activity.

107.    USDA's actions have directly and proximately caused Ms. Davis substantial economic loss, damage to her career and professional reputation, humiliation, pain, and suffering.

108.    USDA's actions were wanton, reckless, or in willful indifference to Ms. Davis's rights.

## **REQUEST FOR RELIEF**

109.    WHEREFORE, Ms. Davis requests relief against USDA as follows:

a.  Enter judgment in her favor against USDA for retaliation in violation of Title VII;

b.  Enter judgment in her favor against USDA for subjecting her to a retaliatory hostile work environment in violation of Title VII;

c.  Order her retroactive appointment to an appropriate GS-13 position;

d.  Award her compensatory damages of $300,000.00;

e.   Award her attorney's fees and the costs of this litigation;

f.   Award her back pay, front pay and future benefits as may be appropriate;

g.   Enjoin USDA from discriminating against, retaliating against, or harassing her in any way;

h.   Award her appropriate prejudgment interest;

i.   Award such other relief as may be necessary and appropriate.

<u>**JURY DEMAND**</u>

Ms. Davis demands a jury trial.


Dated: July 31, 2017                                     Respectfully Submitted,

                                                                    <u>/s/ *Onyebuchim A. Chinwah*</u>
                                                                    Yaida O. Ford, # 497013
                                                                    Onyebuchim A. Chinwah[6]
                                                                    FORD LAW PROS P.C.
                                                                    1001 G Street NW, Ste. 800
                                                                    Washington, DC 20001
                                                                    Office: (202) 792-4946
                                                                    yford@fordlawpros.com,
                                                                    ochinwah@fordlawpros.com

                                                                    *Attorneys for Plaintiff*

---

[6] Admitted in Maryland only.  Practicing in the District of Columbia under the direct supervision of Yaida O. Ford, a member of the D.C. Bar, in accordance with D.C.C.A. Rule 49(c).